CARROLL, CHAS., Judge
(concurring specially).
I concur in the court’s reversal of the decree, but I do not agree with the majority’s direction for further trial of this case.
It was established that the value of the interest purchased by the lawyer was far more than he paid for it. This is so, even giving effect to the assignment the plaintiff had made of the income for a period.
By the defendant attorney’s own testimony, he and the plaintiff discussed the value of plaintiff’s share in the estate and estimated it to be in excess of $7,000 after administrative expenses; and the attorney informed the plaintiff that an outsider approached to buy his share in the estate would regard the purchase as a speculation, and probably would not be willing to pay more than one-third of the value of the plaintiff’s interest[1].
*419 It appears that the plaintiff was so pressed for funds that he was willing to sell on that basis if that was all he could get, and he authorized his attorney to so proceed. The attorney purchased the interest for himself, while the plaintiff was given to believe the attorney was selling it to a third party.
But the plaintiff’s lawyer was not uninformed on the value of the plaintiff’s interest in the estate. Conceding that an outside party, not having the full knowledge of the estate enjoyed by the plaintiff and his lawyer, understandably would consider it a speculation, and be willing to buy it only at a fraction of its represented value, the situation was different as to the plaintiff’s attorney. He knew the value, and under the applicable law he was required to make full disclosure to his client of the circumstances of the sale to him, as well as to pay full value. Is it not reasonable to assume that the plaintiff would have expected to receive more from his lawyer, who knew the estate and its value, than from an uninformed third party he understood was to be the purchaser ? Otherwise, why would the lawyer, while buying the interest for himself, allow his client to believe he was selling to an outsider to the estate on a “speculation” basis?
This .record shows, by the plaintiff’s testimony, that even when he and his wife signed the papers for transfer of his interest in the estate to Migoski he understood that the transfer was being handled through Mr. Migoski for some “northern buyer” with whom the attorney was in contact. The testimony given in the case by the defendant attorney does not contain any denial of this. The lawyer testified that he instructed and informed the plaintiff about the papers by which the assignment was being made to him in his name, but his testimony does not disclose what the explanation was, and nowhere does the attorney clearly or flatly state that he informed the plaintiff that it was he, and not a northern buyer as the plaintiff says he understood it, who was buying plaintiff’s interest in the estate. In addition to this nondisclosure on the part of the attorney, there were the circumstances of the financial distress of the plaintiff and an established inadequacy of consideration. The result was that the lawyer acquired property of his client under conditions and-circumstances in which the courts hold he may not be permitted to retain it.
The law applicable to this situation is well stated in 1 Black, Rescission and Cancellation, § 51 (2d ed. 1929), as follows:
“The relation of attorney and client is likewise one which requires the exercise of the utmost good faith and integrity. Any transaction or dealing between them will be closely scrutinized by the courts, and the attorney will not be allowed to retain any un-conscientious advantage which he may have gained, even though he was guilty of no actual fraud. It is necessary, in fact, for him to show, in order to defend his position, that there was no fraud or mistake, no undue influence or bad advice on his part, no concealment or misrepresentation, and no inequitable advantage taken of his dominating position. An attorney who bargains with his client in a matter of advantage to himself must, if the transaction is afterwards questioned, show that it was fairly conducted, and that he discharged his duties to his client not only by refraining from all misrepresentation and concealment, but by diligence to see that the client was fully informed of the nature of the transaction and of his own rights and interests, either by independent advice or else by such advice from the attorney himself as he would have given if *420 he had been a stranger to the transaction. These rules are applicable with perhaps peculiar severity where the attorney buys property from his client or sells to him * * * ”.
I therefore, concur in the reversal of the decree, but I can not agree that there is need for any further trial in this matter; and it is my opinion that this court should remand the cause with directions to enter a decree in favor of the plaintiff for rescission of this sale of his interest in the estate to his lawyer.

. The testimony of Walter J. Migoski on this feature was as follows:
“Q. Did you have any discussion with him as to the value of his inheritance, the price he should ask? A. Yes, I did; and I made certain notations on my files, and if I may use that file to refresh my memory — my scribbled notes show a gross estimated estate of $113,500. Dividing that into sixteen parts would give an interest of $7,093 as the estimated interest of his share. * * * That, combined with the brokerage commission that would have been involved in the sale of those properties [of the estate], the expenses of closing, that I would easily figure on about $20,000 as gross expenses, which would include the brokerage commissions, attorney’s fees, administrative fees, and so on. Taking that into consideration, we arrived at a figure of a little over $7,000 as the estimated value of this one-sixteenth interest in the estate. As I mentioned previously—
“Q. You told him to answer these ads that appeared in the papers, and so on. Had he set any figure, or was it just inquiry? Was he making any figure as to what he should ask for his inheritance? A. I said based upon a figure of $7,500, and that he would probably realize one-third of that. In my opinion, a prospective speculator or buyer would not pay any more than that. And we arrived at $2,500 as a reasonable figure that he could expect to get.
“When he told me that it was all right, what he would be willing to accept for it, I advised him to try to sell it to other people. He came back to see me and had had no success. I then said I had a Canadian client who perhaps would be interested.”
[After explaining that his Canadian client, though interested, had not purchased plaintiff’s interest because he was required to return to Canada on business] “ * * * When Mr. Deal came back to *419 me, I then advised him that in my opinion I could sell it, and if he was interested, I would go ahead. He asked me right then and there, could I advance him some money, and I immediately made out a check for him on, I believe— * * * ”.